## MOSES GRAVES v. THE STATE.

1. PRACTICE. — District Courts have the right to prescribe rules for their own procedure, provided they do not conflict with established law; and there is no law requiring the judge to delay the proceedings in a criminal case, after having opened court, until the defendant's counsel shall reach the court-house.

2. CONTINUANCE — EVIDENCE. — A continuance will not be granted when the evidence sought to be obtained is cumulative, and particularly when, as in this case, the defendant had the full benefit thereof by reading it from the written testimony of the absent witness taken at the examining trial.

Appeal from the District Court of Brazos. Tried below before the Hon. S. Ford.

The indictment charged the defendant with the robbery of Alfred Moore, on the twenty-fourth day of November, 1879, in Brazos County, Texas. He was tried at the ensuing October term of the District Court of Brazos County, found guilty, and his punishment fixed at confinement in the penitentiary for the term of two years. From this judgment he prosecutes this appeal.

From the evidence it appears that the prosecuting witness, Alfred Moore, a resident of Van Zandt, was in the town of Bryan, Brazos County, on the night of November 24, 1879. He entered a ten-pin alley, eating an apple. Here he met the appellant, whom he had seen before, and a man named Telephus Dunnica. Some one offered to wager that the witness did not have another apple. After some talk, the witness drew $5 from his pocket and agreed to accept the wager, and finally showed another apple. Dunnica then asked witness to step farther towards the rear of the alley, as he wished to speak to him. Witness accompanied Dunnica to a point farther back, where Dunnica asked if he could change $5, and witness answered that he could not. Then Dunnica pressed witness to go still farther back into the alley-room; but witness, becoming apprehensive, refused, and left the alley, going to the express office, on the same street, to get a pair of saddle-bags he had left there. This was about eight o'clock at night. Witness had been in the express office but a few moments when the appellant and Dunnica, whom he had left at the alley, entered. Dunnica stopped near the door and the appellant entered the office. In a short time Dunnica asked appellant to wait at the office a few minutes for him, until he returned from the post-office. Presently witness started to leave the office to go to the depot to start home, and as he stepped out of the door, saw Dunnica standing at the corner

of the house.  This again aroused his suspicions, and he
returned to the office.  A policeman passing there, going
towards town, witness walked near him until the policeman
diverged from the road to the depot, and witness pursued
his route.  On looking around he perceived that Dunnica
and appellant were following him.  From this point he ran
until he reached the depot, the two parties, Dunnica and
appellant, following in a run.  Near the depot he passed a
third man, standing near the platform.  Witness passed into
the depot, thence into the telegraph-office, and having told
the operator that two men were trying to rob him, was
requesting the operator to take his money, when Dunnica
entered in a run, and, grasping him by the throat, demanded
that he give up the $5 he (witness) had stolen from him.
Witness denied having stolen the money, and answered that
he had but $10, for which he had that day sold his horse.
Here the operator ordered the parties out of the office.
Dunnica dragged the appellant to the platform, waving a
club over his head, claiming to be a policeman, and demand-
ing the money, charging him with the theft of it.  Appel-
lant was with Dunnica during this time, and had once advised
Dunnica to desist, lest they get into trouble, and said, "Let
him keep the money."  Dunnica dragged the witness into
the presence of the man whom appellant had passed, when
running, at the corner of the depot.  To this man, under
the threats of Dunnica, witness handed his pocket-book, con-
taining $10 — all he had.  When the money was delivered,
Dunnica released witness, and he and the man stepped to
the rear end of a freight-car standing near, and appellant
tarried awhile near witness.  Witness asked appellant to
get the money for him, and offered to give him $2 of it to
do so.  He could not prevail on him to try, and finally
remarked that he would call a policeman; to which the ap-
pellant replied, that a policeman "would not do a d—n bit
of good."  Appellant shortly got with Dunnica and the
third party, and the three left, the witness following.  They

all entered Rhodes' saloon, and presently Policeman Dickinson came in. Witness told him of the robbery. Dickinson arrested the third man — whose name, it transpired, was Bartlett — then, and during the night arrested the other two.

The policeman, telegraph operator, and others about the depot corroborated the witness as to what transpired in their presence. The defence corroborated the witness as to what transpired at the ten-pin alley, except that they attempted to show that Dunnica had lost $5, and believing the witness had the money, called him into the rear of the room to interview him about it.

*J. A. Buckholts*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

White, P. J. The explanation given by the district judge for his action in permitting the district attorney to begin his argument before the counsel for defendant made their appearance in court is amply sufficient. Whilst a defendant has the constitutional right to be heard by himself and counsel, this does not give him or his counsel the right, unnecessarily and without excuse, to delay the public business of the country. The court has the right to prescribe rules for its procedure, provided they are not in conflict with established law, and may use such means as are proper to enforce obedience to them on the part of its officers. It is the duty as well as business of attorneys who have business in court, to be in court when it is in session, that they may attend to their business; and, when opened for business, we know of no law which requires the court either to have them called, or to delay its business to suit their convenience. In this case the attorneys for defendant did arrive before the attorney for the State had closed his opening argument, and the bill of exceptions does not show that any injury of a material character was done their client.

No error was committed in overruling the application for continuance ; the evidence of the absent witness was cumulative, and, if otherwise material, defendant had the full benefit of it by reading it from the written testimony of the witness taken at the examining trial.

The excluded testimony of Dunnica, to the effect that he believed Moore had the $5 which he claimed to have lost, even if legitimate as part of the *res gestœ*, could have had no appreciable or material weight in the case, for that was the theory of the defence, and the point to which all their evidence was directed ; and time and again was it stated in the evidence that Dunnica claimed to have lost $5, and claimed that Moore had gotten it. The jury evidently did not believe the story of defendant and his accomplices ; and, judging from the facts stated in the record, we think they were well warranted in the conclusion that a most cunningly devised and barefaced robbery was perpetrated by defendant and his confederates. The objections to the charge of the court are not tenable. We see no error, and the judgment is affirmed.

*Affirmed.*